# CLEARY GOTTLIEB STEEN & HAMILTON LLP

WASHINGTON, D.C.
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

D: +1 212-225-2508
cboccuzi@cgsh.com

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

March 23, 2018

BY EMAIL AND ECF

The Honorable Richard J. Sullivan
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 2104
New York, NY 10007

Re: *QS Holdco Inc. v. Bank of Am. Corp., et al.*,
No. 1:18-cv-00824-RJS (S.D.N.Y.)

Dear Judge Sullivan:

I represent defendants EquiLend LLC and EquiLend Holdings LLC in the above-referenced case and, for the purpose of this letter, write on behalf of all defendants who agreed to accept service pursuant to the Stipulation filed on March 16, 2018 to describe the basis for defendants' anticipated motion to dismiss for lack of standing and capacity to sue. By joint letter dated March 16, 2018, and Order entered on March 19, 2018, the parties agreed to present this threshold issue to the Court for decision before proceeding further. Defendants already have moved to dismiss nearly identical claims to those asserted in the Complaint in a putative class action pending before Judge Failla. *See Iowa Public Employees' Retirement System, et al. v. Bank of America Corp., et al.*, No. 17-cv-6221 (S.D.N.Y.). Even assuming, however, that there is some merit to the claims, plaintiff here lacks standing because it does not own the claims.

Plaintiff QS Holdco Inc. alleges a conspiracy "to boycott an anonymous, electronic trading platform for stock loans developed and formerly owned by Plaintiff"— a corporation called Automated Equity Finance Markets, Inc., which the Complaint refers to as "AQS." Compl. ¶¶ 1, 38. During the period relevant to the Complaint:

- AQS was owned by Quadriserv Inc. until July 27, 2015. *Id.* ¶ 38.

- Quadriserv sold AQS to plaintiff, which at the time was purportedly called PDQ Inc., on July 27, 2015. *Id.* ¶¶ 37-38.

Cleary Gottlieb Steen & Hamilton LLP or an affiliated entity has an office in each of the cities listed above.

Hon. Richard J. Sullivan
Page 2

- Plaintiff (as PDQ Inc.) sold AQS to a subsidiary of defendant EquiLend Holdings LLC for several million dollars on July 31, 2016. *Id.* ¶¶ 24, 37-39. The Complaint misleadingly asserts that plaintiff sold only assets of AQS to EquiLend (*id.* ¶¶ 21, 39, 217), but in fact, EquiLend bought 100% of the shares of AQS as well as the shares of two related entities.

Plaintiff bases its standing on injuries supposedly caused to the business of AQS. *See, e.g., id.* ¶¶ 1, 288. The Complaint does not allege harm to plaintiff's business or its purported predecessor PDQ independent of the alleged injury to AQS. Indeed, the operative paragraphs of the Complaint alleging how the boycott affected AQS, *id.* ¶¶ 151-221, mention AQS 157 times but do not mention QS Holdco or PDQ at all except with regard to the sale of AQS. Defendants' motion will show that the claims asserted here belonged to AQS and thus were transferred with AQS in 2015 (to PDQ) and 2016 (to EquiLend).

Plaintiff alleges that on January 25, 2018, five days before this action was filed, it obtained an assignment of claims from Quadriserv. *Id.* ¶ 41. Despite our requests, plaintiff has not provided us with a copy of the alleged assignment. (Our efforts to contact Quadriserv to inquire about this have been unsuccessful. The company appears to be defunct as it has no known office or employees, has not paid corporate taxes in recent years, and even its registered agent is unable to locate it.)

Our motion will demonstrate that, even accepting as true that an assignment was attempted, it provides no additional basis on which plaintiff can assert standing. This is because Quadriserv transferred AQS and related corporations to plaintiff in 2015 and plaintiff then transferred those same entities to EquiLend in 2016. Quadriserv therefore had no claim left to assign.

Plaintiff alleges that it "was forced to sell AQS at a significant loss in 2016 to EquiLend." *Id.* ¶ 288. But the law is clear that shareholders, even sole shareholders, do not have standing under the antitrust laws to claim that a violation affecting a corporation they own resulted in a loss of value to their holdings. *Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir. 1986) (affirming dismissal of shareholder antitrust suit alleging the defendants' antitrust violation drove the company out of business).

Moreover, even if there were a good-faith basis to assert that plaintiff had a claim independent of the claims held by AQS, our motion will show that all intangible assets relating to the business of AQS were assigned by Quadriserv to plaintiff and then by plaintiff to EquiLend as part of the transactions described above. This included all claims "known or unknown, disputed or undisputed, joint or several, vested or unvested, executory or not, fixed or unfixed, choate or inchoate, liquidated or unliquidated, secured or unsecured, determinable or undeterminable, accrued or unaccrued, absolute or not, actual or potential, contingent or otherwise" as of the date of each transaction. This identical language was used in both the agreement between Quadriserv and plaintiff and the agreement between plaintiff and EquiLend, although in the latter transaction, plaintiff retained assets relating to a repo product that is not alleged to have been boycotted. Thus, even claims outside the AQS entity were transferred to EquiLend. *See, e.g., Am. Home Prods. Corp. v. CAMBR Co.*, 00-civ-2021 (VM), 2001 WL 79903, at *1-3 (S.D.N.Y. Jan. 30, 2001) (agreement transferring all of the sellers' "rights, claims,

Hon. Richard J. Sullivan
Page 3

credits, causes of action or rights of set-off against third parties" relating to the company being sold "unambiguously conveyed all of its other stakes to litigation, known and unknown, including the [antitrust] Claims at issue here").

For these reasons, it became apparent based on an initial review of the Complaint that plaintiff has no standing to assert the claims at issue here. We therefore asked plaintiff's counsel to explain why they believe their client still owns these claims. In response, counsel did not dispute the basic facts and transactional history described above. Instead, counsel stated that they intend to argue that (1) there was no specification of "antitrust" claims when AQS and related claims were transferred to EquiLend; and (2) EquiLend's purchase of AQS was one of the objectives of the alleged conspiracy and therefore plaintiff somehow still owns the claims. Both arguments are without merit.

Plaintiffs' first argument fails because, as held in *American Home Products*, there is no requirement that a corporate acquisition agreement invoke specific language about "antitrust claims." Plaintiff is a sophisticated company, was represented by experienced counsel when it sold the AQS business along with all claims "known and unknown" to EquiLend for millions of dollars, and should not be heard now to claim that it somehow did not realize it was transferring antitrust claims along with the business.

Plaintiff's second argument has no basis in the law. Even assuming that EquiLend's purchase of AQS was part of a boycott conspiracy – a baseless assertion that is unsupported by any facts and denied by defendants – plaintiff made the decision in 2016 to sell that business and all related claims to EquiLend for millions of dollars. It would create enormous uncertainty for, and undermine the finality of, corporate transactions if a seller were able to turn around and assert claims that it had transferred by alleging that the acquisition was part of a broader conspiracy. By this logic, a party to a settlement agreement could accept valuable consideration, provide a full release of claims, and then later sue under one of those claims by the simple expedient of alleging that the defendant intended as part of its original violation to settle the case cheaply. This would be an absurd rule. Plaintiff may regret that it sold AQS for the amount it received, but that is an issue to take up with its advisers, not by asserting claims it no longer owns.

Finally, plaintiff and EquiLend agreed as part of that transaction irrevocably to waive "all right to trial by jury in any proceeding (whether based in contract, tort or otherwise) arising out of or relating to this agreement or any transaction or agreement contemplated hereby or the actions of any party hereto in the negotiation, administration, performance or enforcement hereof." It is thus inappropriate for plaintiff to try to fold into its Complaint, which demands a jury trial, a claim predicated on an argument that its transfer of AQS and related intangible assets was invalid.

Respectfully Submitted,

/s/ Carmine D. Boccuzzi, Jr.

Carmine D. Boccuzzi, Jr.